# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| YORK INTERNATIONAL CORPORATION, | : | |
| Plaintiff | : | Civil Action No. 1:10-CV-0692 |
| v. | : | |
| LIBERTY MUTUAL INSURANCE COMPANY, | : | The Honorable Sylvia H. Rambo |
| Defendant | : | |

## M E M O R A N D U M

Before the court is Defendant's motion for summary judgment (Doc. 23) and Plaintiff's cross-motion for partial summary judgment (Doc. 25). For the reasons that follow, Plaintiff's motion will be granted in part and denied in part, and Defendant's motion will be denied.

**I.     Background**[1]

**A.     History of York International Corporation**

This is an insurance indemnification action and breach of contract case brought by York International Corporation ("York International") against Liberty Mutual Insurance Company ("Liberty Mutual") whereby York International is

---

[1] The following facts, for the most part, are either stipulated to, or there is no genuine dispute. Therefore, the court will provide citations to the parties' submitted stipulation of fact or their respective statements of material facts. For all genuinely disputed facts, the court will provide citations to the record.

seeking indemnification and defense from Liberty Mutual for over one thousand underlying asbestos complaints.[2]

Liberty Mutual, from October 1, 1952, through October 1, 1956, provided general liability insurance to York Corporation — not to be confused with York International, Plaintiff here, although the parties agree that through a series of corporate transactions, York International eventually acquired all of the assets of York Corporation. (Stipulation, Doc. 22, ¶ 2.)

On or around June 30, 1956, all assets and liabilities of York Corporation were transferred to Borg-Warner Corporation ("Borg-Warner"), as evidenced by an Agreement of Exchange of Assets for Capital Stock dated May 9, 1956, and a Bill of Sale dated June 30, 1956. (*Id.*, ¶ 5.) The Bill of Sale contained the following relevant language:

> [York Corporation] does hereby sell, grant, convey, assign, transfer and set over to Borg-Warner Corporation, its successors and assigns, all of its property and assets, real, personal, and mixed, both tangible and intangible, whatsoever in nature and description and wheresoever situated . . . including without limitation of the foregoing . . . insurance policies of every kind . . . .

(Bill of Sale, Ex. 3 to Stipulation, at YORK/LM 00001.)

> . . . however, that nothing in this bill of sale and conveyance shall be construed as an attempt hereby to assign any contract, claim, demand or right that is non-assignable but York Corporation covenants to use its best effort to obtain any and all consents necessary to the assignment of any contract, claim, demand or right not now assignable . . . .

---

[2] It is not disputed that prior to 1956, York Corporation used asbestos-containing products in the air conditioning units it sold. This practice continued after York Corporation dissolved, but the parties are not sure for how long asbestos-containing products were used. (Def.'s Statement of Material Facts ("SMF"), ¶¶ 43-44; Pl.'s Counter SMF, ¶¶ 43-44.)

(*Id.*, at YORK/LM 00002 ("Non-Assignment Clause")).

The assets obtained by Borg-Warner were placed in the York Division of Borg-Warner which operated until the early 1980s. (Stipulation, Doc. 22, ¶ 6.) Meanwhile, in 1972, York International Corporation was formed in Delaware and became a wholly-owned subsidiary of Borg-Warner. (*Id.*, ¶ 12.) In 1981, Borg-Warner also acquired and operated the following companies: Luxaire, Inc.;York-Luxaire, Inc.; and Westinghouse Electric Corporation. (*Id.,* ¶¶ 13-14.) Luxaire, Inc. manufactured products under the brands Luxaire, Fraser-Johnston, Westinghouse and Moncreif. (*Id.,* ¶ 14.)

Through a series of events not pertinent to this action, in December 1985, Borg-Warner — which at this time was called Borg-Warner Air Conditioning, Inc. — changed its name to York International Corporation, not the same company as Plaintiff. (*Id.*, ¶¶ 15-21.) Through another convoluted series of corporate transactions and acquisitions, in 1991, York International, Plaintiff here, was formed. (*Id.*, ¶¶ 22-31.) Notably, the parties stipulate that Plaintiff York International acquired all assets of the predecessor companies.

### B.    Liberty Mutual Policies

Between October 1, 1952, and October 1, 1956, Liberty Mutual issued four general comprehensive liability policies to the original York Corporation. (*Id.*, ¶ 34.) Each policy contained an assignment clause that stated the following[3]: "Assignment of interest under this policy shall not bind the company until its consent is endorsed here-on. . . ." (Liberty Mutual, Comprehensive General Liability Policy

---

[3] Only the policies for years 1952-1953 and 1954-1955 could be located by the parties. However, the parties stipulate that the language contained in all four policies was substantively identical for purposes of summary judgment.

Nos. CGL20-301369-52PA & LB20-201369-53NY, Exs.. 26 & 27 to Stipulation.) York International stipulated that they have no facts or information available to indicate York Corporation obtained Liberty Mutual's consent when they assigned all of their assets and liabilities, including insurance contracts, to Borg-Warner. (Stipulation, Doc. 22, ¶ 47.)

### C. Procedural History

On March 30, 2010, York International filed this declaratory judgment and breach of contract cause of action against Liberty Mutual in federal court based on diversity of citizenship.[4] (Doc. 1.) On March 8, 2011, both parties filed cross-motions for summary judgment and briefs in support, along with statements of material facts not in dispute.[5] (Docs. 23 - 28.) On March 29, 2011, the parties filed their respective briefs in opposition to the motions for summary judgment and answers to the statements of material facts. (Docs. 30 - 33.) On April 12, 2011, reply briefs were filed (Docs. 39 & 42.), and Plaintiff also filed a response to Defendant's answer to Plaintiff's statement of material facts, (Doc. 40). The motions are now ripe for disposition.[6]

---

[4] The original complaint also sought relief for breach of the covenant of good faith and fair dealing and statutory bad faith. (Doc. 1, Counts III & IV.) However, on March 2, 2011, York International agreed to withdraw those claims. (Doc. 21, ¶ 3.)

[5] Plaintiff's motion is titled a "partial" motion for summary judgment because they are only moving for summary judgment on Counts I and II of the complaint. However, because Plaintiff has withdrawn Counts III and IV, the motion is considered to be a complete motion for summary judgment.

[6] Plaintiff requested leave to file a sur-reply brief to Defendant's motion for summary judgment (Doc. 44), however, this request was denied by the court in an order dated April 25, 2011 (Doc. 50).

## II.     **Legal Standard**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the nonmoving party. *Id.* at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

The moving party bears the initial burden of demonstrating the absence of a disputed issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Upon such a showing, the burden then shifts to the non-moving party to present "specific facts showing the existence of a genuine issue for trial." FED. R. CIV. P. 56(e). The nonmoving party may not simply sit back and rest on the allegations in its complaint; instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that

party's case, and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

The court is permitted to resolve cross-motions for summary judgment concurrently. *InterBusiness Bank, N.A. v. First Nat'l Bank of Mifflintown*, 318 F. Supp. 2d 230, 235 (M.D.Pa. 2004) (describing concurrent resolution of cross-motions for summary judgment as "a formidable task"); 10A Charles Alan Wright *et al.*, FED. PRACTICE AND PROCEDURE § 2720 (3d ed.1998). When doing so, the court is bound to view the evidence in the light most favorable to the non-moving party with respect to each motion. FED. R. CIV. P. 56; *Raymond Proffitt Found. v. U.S. Envtl. Prot. Agency*, 930 F. Supp. 1088, 1096 (E.D. Pa. 1996).

Because subject matter jurisdiction in this case is based on diversity of citizenship, the court looks to the substantive law of Pennsylvania to determine the rights and obligations of the parties. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 77 (1938). The law of the Commonwealth is declared by "its Legislature in a statute or by its highest court." *Id*. The Pennsylvania Supreme Court is the best authority on Pennsylvania law, but when the Supreme Court has not issued a clear pronouncement in a particular area, the court "must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data" to determine what the law is. *McKenna v. Ortho Pharm. Corp.*, 622 F.2d 657, 661, 663 (3d Cir. 1980); *see also Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967). Opinions from lower Pennsylvania courts are not controlling, but

they are entitled to significant weight when there is no indication that the Pennsylvania Supreme Court would rule otherwise.

### III.   Discussion

Plaintiff alleges that Liberty Mutual has a duty to defend or indemnify York International for injuries alleged to have occurred due to asbestos exposure from products manufactured by York Corporation. Defendant filed for summary judgment arguing that the 1956 Bill of Sale between York Corporation and Borg-Warner contained a non-assignment clause which effectively bars assignment of claims under the Liberty Mutual policies absent Liberty Mutual's consent.

Plaintiff filed a cross motion for summary judgment arguing it is entitled to coverage under the Liberty Mutual policies for the time period of October 1, 1952, through October 1, 1956. Specifically, Plaintiff argues that: 1) the parties have stipulated that, through a series of corporate transaction, York International acquired all of the assets of York Corporation, and this includes the Liberty Mutual policies; 2) the non-assignment clause is unenforceable because the injuries for which coverage is sought pre-date the assignment; and 3) for these same reasons, Liberty Mutual has not only a duty to indemnify York International, but also a broader duty to defend against future claims. Plaintiff is seeking declaratory relief and relief under a breach of contract theory.

#### A.   Choice of Law

Both parties in their supporting briefs argue that either Pennsylvania or New York law should control the outcome of this case. However, both further

acknowledge that a choice of law analysis is not necessary because the result would be the same under either states' applicable law. (*See* Def.'s Br. Supp. Mot. for Summ. J. at 2, "With respect to the issues presented in this motion, however, because the laws of the potentially applicable jurisdictions would produce the same result, 'there is no conflict at all, and a choice of law analysis is unnecessary.'" (quoting *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007)); (*See* Pl.'s Br. Supp. Mot. for Summ. J. at 12, "In this case, there is no material difference in the laws of any of the states that are potentially applicable regarding the operative issues of (1) assignment of insurance policies and rights and (2) an insurance company's duty to defend its policyholder against underlying claims for asbestos bodily injury.") The court agrees with the parties that under either — New York or Pennsylvania laws — the result in this case would be the same and therefore no choice of law analysis need take place. *See Hammersmith TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007); *Elgin Sweeper Co. v. Melson Inc.*, 885 F. Supp. 641, 648 (N.D.N.Y 1995) (explaining "where no material difference in state substantive law exists, the court need not determine which state law to apply.");

**B.** **Non-Assignment Clause**

In its motion, Liberty Mutual argues that, under the plain meaning of the contracts,[7] because the 1956 Bill of Sale between York Corporation and Borg-Warner contained a non-assignment Clause, as well as the assignment language contained in the actual policies themselves, and no facts or evidence suggest that consent was ever obtained to assign the rights of the Liberty Mutual policies, no transfer of rights under these policies ever occurred, and York International, therefore, should not be allowed to assert such rights.

Although the general rule is to look to the intent of the parties and the plain language of a contract, both Pennsylvania and New York courts, as well as multiple other jurisdictions, have declined to enforce non-assignment clauses where the injury or occurrence took place before the actual assignment. *See Viola v. Fireman's Fund Ins. Co.*, 965 F. Supp. 654, 658-59 (E.D. Pa. 1997) (referencing *Nat'l Memorial Serv. v. Metro. Life Ins. Co.*, 335 Pa. 155 (1946); *Cont'l Casualty Co. v. Diversified Indus.*, 884 F. Supp. 937 (E.D. Pa. 1995); COUCH ON INSURANCE

---

[7] The fundamental rule in contract interpretation is to ascertain the intent of the contracting parties. *Ins. Adjustment Bureau, Inc. v. Allstate Ins. Co.*, 905 A.2d 462, 480 (Pa. 2006); *see Slatt v. Slatt*, 477 N.E.2d 1099, 1100 (N.Y. 1985). In cases of a written contract, the intent of the parties is determined by the writing itself. *Ins. Adjustment Bureau, Inc.*, 905 A.2d at 480. Under ordinary principles of contract interpretation, the agreement is to be construed against its drafter. *See Shovel Transfer & Storage, Inc. v. PLCB*, 739 A.2d 133, 139 (Pa. 1999); *Computer Associates Int'l, Inc. v. U.S. Balloon Mfg. Co., Inc.*, 782 N.Y.S.2d 117, 118 (N.Y. 2004). When the terms of a contract are clear and unambiguous, the intent of the parties is to be ascertained from the document itself; however, when an ambiguity exists, parol evidence is admissible to explain or clarify or resolve the ambiguity, irrespective of whether the ambiguity is patent, created by the language of the instrument, or latent, created by extrinsic or collateral circumstances. *Ins. Adjustment Bureau, Inc.*, 905 A.2d at 480; *Computer Associates Int'l, Inc.*, 781 N.Y.S.2d at 118. A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense. *Kripp v. Kripp*, 849 A.2d 1159, 1163 (Pa. 2004); *see Computer Associates Int'l, Inc.*, 781 N.Y.S.2d at 118. While unambiguous contracts are interpreted by the court as a matter of law, ambiguous writings are interpreted by the finder of fact. *Kripp*, 849 A.2d at 1163.

2d, Vol. 16, § 63:40 (1983)); *see also Texaco v. Comm. Ins. Co. of Newark, N.J.*, 1995 WL 628997, \*6 (S.D.N.Y. Oct. 26, 1995) (referencing *Brunswick Corp. v. St. Paul Fire & Marine Ins. Co.*, 509 F. Supp. 750 (E.D. Pa. 1981) (showing outcome is the same under Delaware, Pennsylvania or Maryland Law)); *Chatham Corp. v. Argonauts Ins. Co.*, 334 N.Y.S. 2d 959 (Sup. Ct. Nassau Cty. 1972); *Elliott Co. v. Liberty Mutual Ins. Co.*, 434 F. Supp. 2d 483, 490-91 (N.D. Ohio 2006) (compiling cases).

These cases base their reasoning along two avenues. Some cases argue that non-assignment clauses only limit an insured's ability to assign the actual policy, and not claims thereunder, and thus, allowing a party to assign claims already accrued under the policy does not actually contravene the non-assignment clause. *Elliott*, 434 F. Supp. 2d at 490 (citing *Viola*, *supra* and *Fiorentino v. Lightening Rod Mut. Ins. Co.*, 682 N.E. 2d 1099 (Ohio Ct. App. 1997)).

> [T]he great weight of authority supports the rule that general stipulations in policies prohibiting assignments thereof except with the consent of the insurer apply to assignments before loss only, and do not prevent an assignment after loss, for the obvious reason that the clause by its own terms ordinarily prohibits merely the assignment of the policy, as distinguished from the claim thereunder, and the assignment before loss involved a transfer of a contractual relationship while the assignment after loss is the transfer of a right to a money claim.

*Viola*, 965 F. Supp. at 659.

Other cases focus on the fact that the insurer is not actually harmed by the assignability of claims because "the assigned risk is the same risk it initially agreed to insure." *Id.* (compiling cases). The purpose of non-assignment clauses is to prevent an insurer from being forced to undertake increased risks without the insurers consent. *See Texaco*, 1995 WL 628997 at \*6; *Viola*, 965 F. Supp. at 659.

"Stipulations in policies forbidding assignments have no effect on the 'assignment of the policy or rights after the occurrence of the event, which creates the liability of the insurer.'" *Viola*, 965 F. Supp. at 659.

Because court's have declined to enforce non-assignment clauses, the presence of which forms the basis of Defendant's argument, the court will deny Defendant's motion. York International's request for indemnification does not seek to increase or expand the risk that Liberty Mutual contracted to insure because the alleged injuries took place during the applicable coverage period which was before the contracts were assigned. To the extent York International's complaint is read in such a way as to increase or expand coverage that Liberty Mutual agreed to provide York Corporation, it will be denied.

Because the parties have stipulated to the fact that York International acquired all of the assets of York Corporation, and because the court has declined to enforce the non-assignment clause, York International is permitted to "stand in the shoes of [York Corporation] with respect to the rights under the" Liberty Mutual policies at issue here. *See Gen. Refractories Co., et al. v. Travelers Ins. Co., et al.*, 1998 U.S. Dist. LEXIS 1998, at *14 (E.D. Pa. Dec. 15, 1998) (relying on *Gen. Refractories Co. v. Travelers Ins. Co.*, 107 F.3d 7 (3d Cir. 1996), *reh'g held*, (3d Cir. Jan. 17, 1997)).[8] Other than the non-assignment clause, there is no language in the 1956 Bill of Sale that would limit York International from acquiring the rights of York Corporation, and notably, the parties have stipulated that York International did

---

[8] *General Refractories* was based on facts substantially similar to those alleged here, however, the policies and transfer of assets did not contain non-assignment clauses. However, because the court has determined that the non-assignment clauses are not enforceable, the reasoning of the Third Circuit, that successors to the policies have the right to sue for injuries alleged to have occurred thereunder, becomes applicable.

in fact acquire all of the assets of York Corporation. Liberty Mutual provided general liability coverage to York Corporation for the period from October 1, 1952, through October 1, 1956. York International, therefore, is permitted to seek indemnification from Liberty Mutual for asbestos related injuries alleged to have occurred during the policy period. However, York International may only seek defense or indemnification for complaints that name York Corporation or York International as a successor-in-interest to York Corporation.[9] York International will not be permitted to "piggy back" additional claims that occurred outside the policy periods and/or do not name York Corporation or York International as a successor-in-interest to York Corporation. As such, summary judgment for York International will be granted in part and denied in part. Thus, Liberty Mutual will be responsible to defend or indemnify York International for the October 1, 1952, through October 2, 1956 policy periods. Therefore, Plaintiff's request for declaratory relief will be granted.[10]

---

[9] The issue is not before the court, and thus, no determination will be made as to how Plaintiff intends to show that York Corporation, and not the various other entities, was responsible for the asbestos-related injuries of the individual complainants. By way of example, Defendant outlines an instance of a complaint where a plaintiff alleges asbestos-related injuries occurring from 1945 into the 1990s. Throughout this time, the plaintiff worked in both the United States Navy, and as a boiler inspector at various companies. This complaint names York International as a defendant, but does not mention York Corporation or York International being a successor-in-interest to York Corporation. (*See* Doc. 42, Def.'s Reply Br. to Def.'s Mot. for Summ. J., at 6.) The underlying plaintiffs alleging asbestos injury will have a significant burden of proving that York Corporation, from October 1, 1952, through October 1, 1956, caused the asbestos-related injuries they are alleging.

[10] As mentioned above, Plaintiff also brings a claim for breach of contract. However, neither party expands on this claim, and the complaint appears to base this claim on the same facts as those for defense and indemnification. To the extent that the claim is based on the same allegations as those for declaratory relief, in light of the court's determination that declaratory relief will be granted, this claim would appear to be moot. To the extent the claim is based on facts not apparent to the court, additional briefing will be ordered so that the parties may fully address the breach of contract cause of
(continued...)

### C. <u>Allocation</u>

Liberty Mutual goes to great length to explain other asbestos litigation suits taking place across the nation. Specifically, Liberty Mutual addresses allocation schemes used by other courts in the event that it be found liable for any of the underlying asbestos complaints.

The court will decline to address these arguments as it would appear that "no actual case or controversy exists" and the court would thus, be improperly issuing an advisory opinion. *See Gen. Refractories,* 1998 U.S. Dist. LEXIS at *17 (declining to determine an allocation scheme at declaratory judgment state of litigation). At this point in the litigation, neither the court nor the parties are aware of how many, *if any* asbestos-related complaints Liberty Mutual will be required to cover. As such, there is no actual case or controversy at this juncture and the conditioning of an allocation scheme which may or may not ever need to come to fruition "would be tantamount to an improper advisory opinion." *Id.* at 18 (referencing U.S. CONST. ART. III, § 2, cl.1 and compiling cases)

### IV. <u>Conclusion</u>

Although the filings in this case are substantial, the facts are not greatly disputed. To the extent that an underlying asbestos complaint properly alleges that York Corporation, or York International as a successor-in-interest to York Corporation, caused asbestos-related injuries during the policy periods, Liberty

---

[10](...continued)
action.

Mutual will be required to defend or indemnify York International in those cases. An appropriate order will issue.

                                              s/Sylvia H. Rambo
                                              United States District Judge

Dated: May 26, 2011.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **YORK INTERNATIONAL CORPORATION,** | : | |
| Plaintiff | : | Civil Action No. 1:10-CV-0692 |
| v. | : | |
| **LIBERTY MUTUAL INSURANCE COMPANY,** | : | The Honorable Sylvia H. Rambo |
| Defendant | : | |

### O R D E R

In accordance with the accompanying memorandum of law, it is **HEREBY ORDERED**:

1) Defendant's motion for summary judgment (Doc. 23) is **DENIED**.

2) Plaintiff's cross motion for partial summary judgment (Doc. 25) is **GRANTED** as to Count I as follows: in that Liberty Mutual will be required to defend or indemnify York International for asbestos-related claims attributable to York Corporation during the time period from October 1, 1952, through October 1, 1956, during which York Corporation was covered under the Liberty Mutual policies in question. However, only complaints which bring allegations against York Corporation or York International as a successor-in-interest to York Corporation, during this time period, are to be considered.

3) Plaintiff's cross motion for partial summary judgment (Doc. 25) is **DENIED** as to Count I with respect to any claims that fall outside the policy periods mentioned above.

4) Plaintiff's cross motion for partial summary judgment (Doc. 25) is **MOOT** with regard to Count II to the extent the relief requested is the same as contemplated by Count I.  To the extent the claim is based on additional facts not clearly outlined in the complaint or the briefings, the parties shall have **fourteen (14)** days to file sur-reply briefs to the respective motions for summary judgment to more fully address the breach of contract cause of action.

                                                   s/Sylvia H. Rambo
                                                   United States District Judge

Dated:  May 26, 2011.