IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **YORK INTERNATIONAL CORPORATION,** | : | |
| | : | |
| **Plaintiff** | : | **Civ. No. 1:10-CV-0692** |
| | : | |
| **v.** | : | |
| | : | |
| **LIBERTY MUTUAL INSURANCE COMPANY,** | : | |
| | : | **Judge Sylvia H. Rambo** |
| **Defendant** | : | |

# M E M O R A N D U M

In this civil action, Plaintiff filed suit seeking a declaration that Defendant, its former insurer, owes a duty to defend and indemnify Plaintiff against underlying asbestos-related actions. On July 9, 2015, the court entered partial summary judgment in favor of Plaintiff as to a choice of law issue and struck certain portions of an affidavit submitted by Defendant in support of its motion for partial summary judgment. Presently before the court is Defendant's motion for reconsideration brought pursuant to Federal Rule of Civil Procedure 59(e), wherein it asserts that the court made an error of law in striking portions of the affidavit and granting partial summary judgment in favor of Plaintiff. For the following reasons, Defendant's motion will be granted in part and denied in part.

## I.      Background

The court presumes the parties' familiarity with the background of this litigation, and a detailed account has been set forth at length in the court's memorandum

accompanying its order granting Plaintiff's motion for partial summary judgment in its entirety and its motion to strike in part. *See generally York Int'l Corp. v. Liberty Mut. Ins. Co.*, 10-cv-0692, 2015 WL 4162981 (M.D. Pa. July 9, 2015). Accordingly, the court will set forth only the most pertinent portions of the factual and procedural history that justify its decision to grant in part and deny in part the instant motion for reconsideration.

### A.    Relevant Factual Background and Procedural History

Plaintiff, a manufacturer and seller of products that formerly contained asbestos, is subject to over a thousand products liability claims in multiple jurisdictions throughout the United States for injuries caused by its asbestos-containing products.[1] Defendant is one of several former products liability insurers for Plaintiff, with its policies (the "York Policies") covering Plaintiff's general products liability risk from October 1, 1952 through October 1, 1956. During the time period covered by the York Policies, as well as the negotiation and consummation of the policies, Plaintiff resided in York, Pennsylvania. At all relevant times, Defendant was, and is, a Massachusetts mutual insurance company with a principal place of business in Boston, Massachusetts. After Defendant denied Plaintiff's claim for defense and indemnification of the underlying asbestos claims pursuant to the York Policies, Plaintiff initiated this action seeking a declaration that Defendant was indeed obligated to defend and indemnify Plaintiff. In a May 26, 2011 memorandum and order,

---

[1] As discussed in the court's prior memoranda in this case, Plaintiff's predecessor corporate entity, York Corporation, is the actual insured and party subject to the underlying asbestos claims. For brevity, however, the court will herein refer only to Plaintiff. A more detailed summary of Plaintiff's corporate history, which is not relevant to the instant motion, is discussed in the court's May 26, 2011 memorandum. *See York Int'l Corp. v. Liberty Mut. Ins. Co.*, Civ. No. 10-cv-0692, 2011 WL 2111989 (M.D. Pa. May 26, 2011).

the court held that Plaintiff was not barred from submitting claims for defense and indemnification to Defendant for the asbestos-related litigation that Plaintiff was facing, but limited the scope of the claims to those alleging injury that occurred during the effective period of the York Policies.

A dispute subsequently arose as to whether Pennsylvania or New York law would apply to Defendant's duties to defend and indemnify Plaintiff for those claims arising under the York Policies, and the parties filed cross-motions for partial summary judgment as to choice of law. Due to the passage of more than fifty years between the period covered by the York Policies and the initiation of the instant action, no party with firsthand knowledge of the negotiation or consummation of the policies could be identified, and complete copies of the York Policies could not be located. Declarations pages were located for the York Policies, however, listing "c/o Henry E. Wood & Associates Inc., 45 John Street, New York 38, New York" as the address for Plaintiff.

Significantly, in support of its motion for partial summary judgment, Defendant submitted an affidavit of a consultant and former longtime employee, Jerry McCullough (the "McCullough Affidavit"). (Doc. 83-1.) Although Mr. McCullough did not begin his employment with Defendant until several years after the period covered by the York Policies, he nonetheless testified, based on the listed address on the declarations pages and his familiarity with Defendant's standard practices during the 1950s, as to Henry E. Wood's role in negotiating and acquiring the York Policies. Plaintiff moved to strike portions of the

McCullough Affidavit due to Mr. McCullough's lack of personal knowledge as to some of the facts contained therein, the inclusion of improper legal conclusions, and contradictions with his own prior deposition testimony. On July 9, 2015, the court granted Plaintiff's motion for partial summary judgment, holding that Pennsylvania law applied to Defendant's duties of defense and indemnification, and denied Defendant's motion. In so ruling, the court granted Plaintiff's motion to strike the following portions of the McCullough Affidavit:

> 14. Based on this standard practice, when Liberty Mutual Insurance issued the policies at issue, they would have been sent to Henry E. Wood in New York.
>
> . . .
>
> 17. Based on the above, the policies issued to York Corporation would have been negotiated in New York between a salesperson in Liberty Mutual Insurance's New York office and Henry E. Wood.
>
> . . .
>
> 19. Based on this standard practice, Henry E. Wood would have sent the premium payment to Liberty Mutual Insurance in New York.

*York Int'l Corp.*, 2015 WL 4162981, at *5-6.

On July 23, 2015, Defendant filed the instant motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e) (Doc. 108), and a brief in support thereof (Doc. 109). In its supporting brief, Defendant argues that the court erred in striking Paragraphs 14, 17, and 19 of the McCullough Affidavit because the testimony contained therein was based on Mr. McCullough's knowledge of Defendant's routine organizational practices, which is

4

admissible under Federal Rule of Evidence 406. (*Id*., pp. 1-4 of 10.) Defendant further argues that because the court can properly rely on Paragraphs 14, 17, and 19 of the McCullough Affidavit, the court should reverse its decision on choice of law and find that New York law applies to Defendant's defense and indemnification obligations, or, in the alternative, find that the McCullough Affidavit raises a genuine issue of material fact which precludes summary judgment as to choice of law. (*Id*., p. 10 of 10.) Plaintiff filed its response on August 6, 2015 (Doc. 110), and Defendant replied on August 20, 2015 (Doc. 111). Thus, the motion has been fully briefed and is ripe for consideration.

## II.      Legal Standard

Motions for reconsideration under Federal Rule of Civil Procedure 59(e) serve primarily to correct manifest errors of law or fact in a prior decision of the court. *See United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003). Under Rule 59(e), "a judgment may be altered or amended if the party seeking reconsideration establishes at least one of the following grounds: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). Motions for reconsideration may also be appropriate in instances "where, for example, the Court has patently misunderstood a party, or has made a decision outside the

adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Reaves v. Pa. State Police*, Civ. No. 09-cv-2549, 2014 WL 486741, *3 (M.D. Pa. Feb. 6, 2014) (quoting *Rohrbach v. AT&T Nassau Metals Corp.*, 902 F. Supp. 523, 527 (M.D. Pa. 1995)). "A motion for reconsideration is not to be used as a means to reargue matters already argued and disposed of or as an attempt to relitigate a point of disagreement between the Court and the litigant." *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 606 (M.D. Pa. 2002). "Likewise, reconsideration motions may not be used to raise new arguments or present evidence that could have been raised prior to the entry of judgment." *Hill v. Tammac Corp.*, Civ. No. , 2006 WL 529044, *2 (M.D. Pa. Mar. 3, 2006) (citing *McDowell Oil Serv., Inc. v. Interstate Fire & Cas. Co.*, 817 F. Supp. 538, 541 (M.D. Pa. 1993)). Reconsideration of a judgment is an extraordinary remedy, and courts should grant such motions sparingly. *D'Angio v. Borough of Nescopeck*, 56 F. Supp. 2d 502, 504 (M.D. Pa. 1999).

It follows from the remedial purpose of a Rule 59(e) motion that the standard of review relates back to the standard applicable in the underlying decision. *See Fiorelli*, 337 F.3d at 288. Accordingly, when a motion for reconsideration challenges the court's decision to grant or deny summary judgment, the standard set forth in Federal Rule of Civil Procedure 56 guides the analysis. Relief may be granted if the materials related to the summary judgment motion - including the pleadings, discovery materials, and affidavits - "show that there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a).  The court must consider all facts in the light most favorable to the nonmoving party to determine whether a reasonable jury could return a verdict for the nonmoving party.  *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247 (1986); *Int'l Raw Materials Ltd. v. Stauffer Chem. Co.*, 898 F.2d 946, 949 (3d Cir. 1990).  It is through this lens that the court must address Defendant's instant motion.

## III.    Discussion

Defendant's sole argument in support of its motion for reconsideration is that the court, in "striking the affidavit of Mr. McCullough[, made] an error of law in that it was contrary to [Federal Rule of Evidence 406.]" (Doc. 109, p. 4 of 10.)  As an initial matter, Plaintiff contends it is inappropriate for Defendant to raise an argument premised on Rule 406 in its motion for reconsideration because such "motions may not be used to raise new arguments," (Doc. 110, p. 4 of 9 (quoting Doc. 52, p. 2 of 3 (citing *McDowell Oil Serv. Inc.*, 817 F. Supp. At 541))), and Defendant did not address the rule in its motion for summary judgment.  However, while the court recognizes that Defendant failed to specifically reference Rule 406 in its motion for summary judgment, its argument therein directly implicated the rule.  Therefore, the court finds that Defendant has not raised a new argument, and will consider Defendant's argument on its merits.

Rule 406 states that "[e]vidence of . . . the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to

prove that the conduct of the . . . organization on a particular occasion was in conformity with the . . . routine practice." Fed. R. Evid. 406. "The routine practice of an organization is defined as 'the regular practice of responding to a particular kind of situation with a specific type of conduct.'" *Argentieri v. First Veh. Servs., Inc.*, Civ. No. 10-cv-2086, 2011 WL 710485, *9 (E.D. Pa. Feb. 28, 2011) (citing Kenneth S. Broun, 1 McCormick on Evidence § 195, at 783 (6th ed. 2009)). The purpose of this so-called "habit evidence" is "to fill in a gap in direct evidence about what [an organization] did on a specific occasion with circumstantial evidence sufficient to reasonably allow one to conclude that the [organization] probably acted in conformity with [its] usual pattern on the occasion in question." *Id.* (citing *Pugh v. Wynder,* Civ. No. 07-cv-3399, 2008 WL 2412978, *14 (E.D. Pa. June10, 2008)).

In order to establish specific conduct as habit, a party "must produce evidence establishing a 'degree of specificity and frequency of uniform response that ensures more than a mere 'tendency' to act in a given manner, but rather, conduct that is 'semi-automatic' in nature.'" *In re Giquinto*, 388 B.R. 152, 168 (Bankr. E.D. Pa. 2008) (quoting *Simplex, Inc. v. Diversified Energy Sys., Inc.*, 847 F.2d 1290, 1293 (7th Cir. 1988)). Generally, "[h]abit evidence 'is never to be lightly established, and evidence of examples, for purposes of establishing such habit, is to be carefully scrutinized before admission.'" *Dover-Hymon v. Southland Corp.*, Civ. No. 91-cv-1246, 1993 WL 419705, *4 (E.D. Pa. Sept. 27, 1993) (quoting *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 511 (4th Cir. 1977)). Such care

in establishing conduct as habit is especially important when dealing with the routine practice of business organizations because "evidence of their routine practice is ‚particularly persuasive.'" *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1262 (10th Cir. 2012) (citation omitted).

Turning to the portions of the McCullough Affidavit that were stricken by the court, Defendant argues that Paragraphs 14, 17, and 19 are admissible based on Mr. McCullough's familiarity with Defendant's routine business practices at the time it negotiated and contracted the York Policies. The court will reconsider the admissibility of each paragraph.

## A. Paragraph 14 of the McCullough Affidavit

In Paragraph 11, the McCullough Affidavit states that "[i]t was the standard practice of Liberty Mutual Insurance that upon issuance, the insurance policy would be sent to [the] address designated for the insured [on] the Declarations page." (Doc. 83-1, ¶ 11.) Paragraph 14 provides that, "[b]ased on this standard practice, when Liberty Mutual Insurance issued the policies at issue, they would have been sent to Henry E. Wood in New York." (*Id*. at ¶ 14.) Because these portions of the affidavit establish that it was Defendant's regular practice to issue its insurance policies to the address for the insured listed on the declarations pages of the policies, the court finds that the specificity and frequency required to treat the conduct as a routine organizational practice under Rule 406 is met. *See Schwartz v. Comcast Corp.*, 256 F. App'x 515, 519 (3d Cir. 2007) (holding that defendant's standard

practice of providing a subscription agreement to every new customer was sufficient to find

that plaintiff had notice of the subscription agreement); *Vanalt Elec. Constr. Inc. v. Selco*

*Mfg. Corp.*, 233 F. App'x 105, 108 (3d Cir. 2007) (finding that defendant's practice of

attaching a limitation of liability document "to every quote it submitted" sufficient to show

plaintiff received the document).  The court will therefore grant Defendant's motion for

reconsideration as to Paragraph 14.  The inclusion of Paragraph 14, however, does not alter

the court's prior decision regarding choice of law.

Upon reconsideration, Paragraph 14 establishes, for purposes of the matter *sub*

*judice*, that the York Policies were initially sent to Henry E. Wood in New York.  In its July

9, 2015 decision, the court specifically contemplated the scenario in which the York Policies

were sent to Henry E. Wood in New York, stating as follows:

> Even assuming, as Defendant contends, that the policies were initially
> delivered to Henry E. Wood at the listed address, it would have
> presumably forwarded those policies to the insured in Pennsylvania
> for execution. Under Pennsylvania law, "[i]t is unclear whether . . . a
> contract sent from an insurer to an insured's broker, which forwards
> the contract to the insured, is considered delivered at the place of the
> broker or the insured."

2015 WL 4162981, at * 13 (quoting *Travelers Prop. Cas. Co. of Am. v. Chubb Custom*

*Ins. Co.*, 864 F. Supp. 2d 301, 310 n.1 (E.D. Pa. 2012)).  Based on both the uncertainty

of Pennsylvania law and the lack of any credible evidence to establish whether Henry E.

Wood was acting as Plaintiff's broker in acquiring the York Policies, the court relied on

Pennsylvania's default rule that "delivery is presumed at the insured's residence" in

concluding that the place of contracting favored the application of Pennsylvania law. *Id.* (citing *Chubb*, 864 F. Supp. 2d at 310); *see also Gen. Refractories Co. v. First State Ins. Co.*, 862 F. Supp. 2d 382, 387 (E.D. Pa. 2012) ("The law of the state where the insurance policy was delivered to *the insured* is the law to be applied in construing its terms.") (citing *Peele v. Atl. Express Transp. Group, Inc.*, 840 A.2d 1008, 1011 (Pa. Super. Ct. 2003)) (emphasis supplied).  The court arrives at the same conclusion herein.

In addition to presuming delivery to the insured's residence, Pennsylvania also adopts the Restatement (Second) of Conflict of Laws in assessing a state's contacts with a contract, *see Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 230 (3d Cir. 2010), which states that "[t]he place of contracting is ,the place where occurred the last act necessary . . . to give the contract binding effect." *Travelers Indem. Co. v. MTS Transp., LLC*, Civ. No. 11-cv-1567, 2012 WL 3929810, *9 (W.D. Pa. Sept. 7, 2012) (quoting Restatement (Second) Conflict of Laws § 188(2) cmt. e (Am. Law. Inst. 1971)).  Regardless of Henry E. Wood's role in the transaction, the last act necessary to give the contracts binding effect, that is, the execution of the contracts, presumably occurred in Pennsylvania at Plaintiff's residence, as Plaintiff maintained no office in New York.  Accordingly, the court again concludes that the place of contracting favors the application of Pennsylvania law.

**B.     Paragraphs 17 and 19**

Both Paragraphs 17 and 19 of the McCullough affidavit rely on Mr.

McCullough's conclusions that Henry E. Wood acted as Plaintiff's broker and that, as an

insurance broker, he would have taken certain actions.  Specifically, in Paragraph 17, Mr.

McCullough states that the York Policies "would have been negotiated in New York

between a salesperson in Liberty Mutual Insurance's New York office and Henry E. Wood"

(Doc. 83-1, ¶ 17), and in Paragraph 19, he states that "Henry E. Wood would have sent the

premium payment to Liberty Mutual Insurance in New York" (*Id.* at ¶ 19).  In its prior

memorandum, the court concluded that Mr. McCullough lacked the personal knowledge to

make these statements namely because (1) there is no independent basis to conclude that

Henry E. Wood acted as Defendant's broker; (2) the pertinent documents underlying the

York Policies are no longer available; (3) Mr. McCullough was not employed by Defendant

until several years after the negotiation and consummation of the York policies; and (4)

Defendant did not have a standard practice of working with insurance brokers such that Mr.

McCullough would be competent to testify as to that practice.

In its motion for reconsideration, Defendant asks the court to consider Rule 406's

impact on its prior analysis.  Specifically, Defendant argues that, although Mr. McCullough

does not have personal knowledge of the negotiation of the York Policies, he does have the

personal knowledge to testify as to Defendant's standard practices in issuing policies to

insureds that were utilizing the services of an insurance broker such that the court may rely

12

upon that evidence to conclude that Defendant and the brokers with which it worked acted in conformity with those practices on this occasion.  Defendant highlights that, in his affidavit, Mr. McCullough testified that he worked as an underwriter for Defendant until 1971; "his training included the review of insurance policies issued by Liberty Mutual in the 1950s so that he "could become familiar with the practices of the company, its procedures and protocols for the issuance, sale and underwriting of policies, and *its practice in dealing with insureds who employed brokers and advisors in connection with the purchase of insurance*;" and that he "worked directly on accounts that used a broker or advisor to assist with their insurance and had to become knowledgeable about what insurance brokers and advisors did in order to compete with insurance competitors that used brokers and advisors."  (Doc. 109, p. 11 of 13) (emphasis in original).

As stated above, to establish specific conduct as a habit, a party "must produce evidence establishing a "degree of specificity and frequency of uniform response that ensures more than a mere "tendency" to act in a given matter, but rather, conduct that is "semi-automatic" in nature.""  *In re Giquinto*, 388 B.R. at 168 (citation omitted).  Contrary to Defendant's argument that it had routine practices associated with an insured's use of a broker, Mr. McCullough testified that "[i]t was *not the typical practice* that insureds would have a broker or advisor assist with the negotiation of policies issued by Liberty Mutual Insurance, *but it did happen on a number of occasions* during my career."  (Doc. 97-1, ¶ 10e (emphasis supplied); *see also id*. at ¶ 9b ("On some occasions, I worked directly with

accounts that used a broker or advisor to assist with their insurance.")  The court cannot

conclude that Defendant's use of a broker on a number of occasions is sufficient to establish

the degree of specificity required for a routine practice such that Paragraphs 17 and 19 are

properly admissible.  *See Mobil Expl. & Producing U.S., Inc. v. Cajun Constr. Servs., Inc.*,

45 F.3d 96, 99-100 (5th Cir. 1995) (holding that "[e]vidence of the defendant's actions on

only a few occasions . . .  are not enough" to be considered a routine practice).  Indeed, not

only did Mr. McCullough explicitly state that working with brokers was not Defendant's

standard practice, he also testified that, when he had occasion to work with an insured who

utilized a broker, he had to research the practices of Defendant's direct competitors that did

use insurance brokers and advisors (*see id.* at ¶ 9.b), thus belying any argument that

Defendant's practices in dealing with insureds that used insurance brokers were "semi-

automatic in nature."

Because the court cannot find that Defendant had a routine organizational

practice when dealing with an insured who used a broker, Mr. McCullough would have to

have personal knowledge of the negotiation and contracting of the York Policies in order to

provide admissible testimony on that subject.  As the court held at summary judgment, Mr.

McCullough does not have such personal knowledge.  Significantly, Mr. McCullough's

statement in Paragraph 17 that the York Policies "would have been negotiated in New York

between a salesperson in Liberty Mutual Insurance's New York office and Henry E. Wood"

(Doc. 83-1, ¶ 17) is based on Mr. McCullough's testimony that Henry E. wood was "the

designee of York Corporation." (*Id.*, ¶ 15.) As discussed at summary judgment, Mr. McCullough has no personal knowledge of the relationship between Plaintiff and Henry E. Wood. Even if the court were able to conclude that Defendant had a routine practice when dealing with insureds who utilized a broker, such practice would not determine the role that Henry E. Wood played for Plaintiff in acquiring the York Policies, and therefore the admissibility of this testimony falls squarely within the purview of Rule 602 and its personal knowledge requirement, not Rule 406. Accordingly, Paragraph 17 will remain stricken.

Likewise, Mr. McCullough's statement in Paragraph 19 of the McCullough Affidavit that "Henry E. Wood would have sent the premium payment to Liberty Mutual Insurance in New York" (*id.*, ¶ 19) is not based on the personal knowledge of Mr. McCullough, or his knowledge of Defendant's routine business practices. Rather, it is a statement as to what Henry E. Wood would have done under the circumstances, which is based on Mr. McCullough's supposition that Henry E. Wood was in fact acting as Plaintiff's broker in acquiring the York Policies. Mr. McCullough simply does not have the personal knowledge required to give such testimony about what Henry E. Wood's conduct would have been, and, as stated above, Henry E. Wood's conduct would not be determined by Defendant's practices. [2] Accordingly, Paragraph 19 will remain stricken.

---

[2] To the extent that Defendant is relying on Mr. McCullough's purported familiarity with the insurance industry in general and the practices of those insurance companies that routinely utilized insurance brokers as a foundation for his testimony herein, the court notes that Mr. McCullough is not testifying as an expert witness. Therefore, the scope of his testimony is limited to Defendant's standard practices, not those of Plaintiff, Henry E. Wood, or insurance brokers generally in the 1950s.

**IV.**      **Conclusion**

For the reasons stated herein, the court finds that Mr. McCullough's testimony does not establish the requisite standard practice necessary to reasonably conclude that Defendant acted in conformity with that practice on the occasion in question, and Mr. McCullough has no basis upon which to testify as to the practices of Plaintiff or Henry E. Wood.  Therefore, the court will grant Defendant's motion for reconsideration in part and place Paragraph 14 of the McCullough Affidavit back on the record.  The court will deny the remainder of Defendant's motion, however, and Paragraphs 17 and 19 will remain stricken.  The inclusion on the record of Paragraph 14 does not create a genuine issue of material fact that would preclude summary judgment, and the court's choice of law analysis remains unchanged.

An appropriate order will issue.

 s/Sylvia H. Rambo
United States District Judge

Dated: October 13, 2015

---

Moreover, even if Mr. McCullough were providing his testimony as an expert witness, without personal knowledge regarding Plaintiff and Henry E. Wood, his testimony would nonetheless be irrelevant to determining facts that are disputed by the parties.  The District Court for the Southern District of New York put it best:

> It is readily apparent that Rule 406 has nothing to do with the proffered expert opinion testimony about industry customs and practices. The plaintiff's proffered experts do not pretend to know anything about the habits of any individual whose conduct is pertinent to the case, or the routine practice of any such organization. Rule 406 has nothing to do with expert opinion testimony, which is covered by Rules 701-706.

*R.B. Ventures, Ltd. v. Shane*, Civ. No. 91-cv-5678, 2000 WL 520615, *5 (S.D.N.Y. May 1, 2000).

16