IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

YORK INTERNATIONAL       :
CORPORATION,             :
                         :        **Civ. No. 1:10-CV-0692**
          **Plaintiff**  :
                         :
     **v.**              :
                         :
LIBERTY MUTUAL INSURANCE :
COMPANY,                 :
                         :        **Judge Sylvia H. Rambo**
          **Defendant**  :

## M E M O R A N D U M

Presently before the court are Defendant's objections to Plaintiff's requests for payment of defense and indemnification costs pursuant to insurance contracts between the parties. For the reasons stated herein, the court will overrule Defendant's objections and order Defendant to pay the defense and indemnification costs.

## I.   Background

The parties are familiar with the background of this litigation, and detailed accounts of the factual and procedural history have been set forth at length in the court's previous memoranda. *See generally York Int'l Corp. v. Liberty Mut. Ins. Co.*, 10-cv-0692, 2015 WL 4162981 (M.D. Pa. July 9, 2015); *York Int'l Corp. v. Liberty Mut. Ins. Co.*, Civ. No. 10-cv-0692, 2011 WL 2111989 (M.D. Pa. May 26,

2011).  Accordingly, the court will not repeat those facts herein, and will discuss only the relevant procedural history leading to the instant dispute.

## A.    Relevant Procedural History

On May 26, 2011, the court ordered Defendant, the insurer of Plaintiff's predecessor corporate entity, York Corporation, to defend and indemnify Plaintiff against asbestos-related actions filed throughout the United States that name either Plaintiff or York Corporation as a defendant and allege an injury caused by a York Corporation product during the coverage period provided by four consecutive one-year insurance policies between the parties (the "York Policies"), which ranged from October 1, 1952 through October 1, 1956.  (*See* Doc. 52.)  On October 28, 2014, after continued disagreement between the parties as to which underlying asbestos complaints triggered Defendant's duties of defense and indemnification, the court ordered the parties to submit a stipulation as to the list of cases for which Plaintiff sought either defense or indemnification, and ordered Plaintiff to disclose its costs in those cases as well as documents sufficient to support a finding that Defendant had a duty to defend or indemnify in each case.  (*See* Doc. 75.)

The parties subsequently filed cross-motions for partial summary judgment as to whether New York or Pennsylvania law applied to the interpretation of the York Policies (Docs. 82 & 83), and Defendant filed objections to Plaintiff's requests for defense and indemnification costs (Doc. 98).  In its July 9, 2015

memorandum, the court found that Pennsylvania law applied to the York Policies. (*See* Doc. 106.)  Defendant then filed a motion for reconsideration as to the choice of law, which the court denied on October 13, 2015.  (Docs. 112 & 113.)  With the choice of law now finally decided, Defendant's objections to Plaintiff's requests for costs are ready for the court's consideration.

## II.   Discussion

Defendant propounds several general objections to Plaintiff's requests for defense and indemnification, as well as specific objections to many of the underlying complaints.  Defendant's general objections are as follows: (1) Plaintiff has not met its burden of providing sufficient documentation to show that the underlying complaints involve injury covered by the York Policies; (2) Defendant's liability should be reduced as to cases that include exposure to asbestos-containing products sold by Plaintiff's corporate predecessors other than York Corporation; (3) Defendant is liable only for a percentage of the costs incurred by Plaintiff in the underlying cases, pursuant to New York law; (4) Plaintiff cannot seek full reimbursement for underlying cases in which defense invoices reflect a cost sharing agreement between Plaintiff and its co-defendants or other insurers; and (5) Defendant is not liable for defense or indemnification costs incurred prior to receiving notice of the underlying cases or for ten of the underlying cases for which it received untimely notice by Plaintiff.  (*See* Doc. 98,

pp. 3-5.)  Defendant's specific objections to many of the underlying cases rely on its general objections, and therefore the court will resolve Defendant's general objections first.

### A.      General Objections

#### 1.      Objection One: Plaintiff's documentary support is insufficient

Defendant's first general objection is that Plaintiff has not provided sufficient support for its requests for defense and indemnification.  Defendant argues that Plaintiff provided only the complaint and defense invoices for sixty-four of the seventy underlying cases.  (Doc. 98, p. 3 of 24.)  Additionally, Defendant argues that those defense invoices include time spent on discovery, and that some of them indicate that the underlying plaintiff's injuries fall outside of the York Policies' coverage.  (*Id*. at pp. 3-4 of 24.)  Plaintiff argues in response that it is only seeking reimbursement of defense costs, which requires nothing more than the underlying complaint alleging an injury potentially covered by the York Policies and the amount incurred by Plaintiff to defend the action.  (Doc. 100, p. 7 of 53.)  Plaintiff states it submitted the amount paid, a check number, and a check date along with each defense invoice to support its claims for defense costs.  (*Id*.)

Under Pennsylvania law, an insurer's duty to defend is determined exclusively by consideration of the allegations set forth in the underlying complaint. *Kvaerner Metal Div. of Kvaerner U.S., Inc. v. Commercial Union Ins.*

*Co.*, 908 A.2d 888, 896 (Pa. 2006). In fact, "no extrinsic evidence is permitted." *Westport Ins. Corp. v. Black, Davis & Shue Agency, Inc.*, 513 F. Supp. 2d 157, 163 (M.D. Pa. 2007). An insurer's duty to defend is triggered "whenever the complaint filed by the injured party may potentially come within the policy's coverage," *Allstate Ins. Co. v. Drumheller*, 185 F. App'x 152, 154 n.2 (3d Cir. 2006) (citing *Pac. Indem. Co. v. Linn*, 766 F.2d 754, 760 (3d Cir. 1985)), and continues "until there is no possibility that the underlying plaintiff could recover on a covered claim." *Frog, Switch & Mfg. Co., Inc. v. The Travelers Ins. Co.*, 193 F.3d 742, 746 (3d Cir. 1999).

Here, the court previously held that Defendant had a duty to defend all complaints that named either Plaintiff or York Corporation as a defendant and alleged an injury attributable to a York Corporation product during the time period from October 1, 1952, through October 1, 1956. (*See* Doc. 52.) Defendant does not dispute that the underlying complaints meet the criteria in the court's prior order. Likewise, Defendant does not dispute that Plaintiff provided the underlying complaint, defense invoices, total amounts paid, check numbers, and check dates for each request for reimbursement. Rather, Defendant argues that some of the defense invoices include time spent on discovery and demonstrate that the liability at issue was outside of the York Policies' coverage. (Doc. 98, p. 3 of 24.) However, discovery is a necessary part of most litigation and is therefore included

in Defendant's duty to defend, once triggered.  Moreover, Defendant must defend all claims that potentially fall within the York Policies' coverage until there is no possibility of a covered claim.  *Frog, Switch*, 193 F.3d at 746.  Although the defense invoices may demonstrate that liability for the underlying injury fell outside the scope of the York Policies, the complaints themselves indisputably establish the possibility of a covered claim for purposes of Defendant's duty to defend.  Accordingly, Defendant's first general objection will be overruled.[1]

### 2.   Objection Two: the York Policies do not cover Plaintiff's corporate predecessors other than York Corporation

Defendant' s second general objection is that it should not be responsible for the full costs of defense and indemnity as to twelve settled underlying cases because they include Plaintiff's corporate predecessors other than York Corporation, and in several of those cases the underlying plaintiff may have been exposed to asbestos-containing products sold by entities other than York Corporation.  (Doc. 98, p. 4 of 24.)  This objection fails, however, for the same reasons as discussed above with regard to Defendant's first general objection.  The inclusion of claims that would not be covered under the York Policies, along with claims that, if true, would be covered, does not relieve Defendant of its duty to

---

[1] Defendant objects to Plaintiff's requests for costs in the *Steffens*, *Sherman*, *Leary*, *Dykeman*, *Douglass*, and *Dahl* actions on the basis that Plaintiff did not produce the discovery in the underlying actions which was the basis of the costs.  As stated herein, Plaintiff has no duty to produce such documents in seeking its defense costs, and these objections will be overruled.

defend because "'[u]nder Pennsylvania law, when an insured tenders multiple claims to an insurer for defense, the insurer is obligated to undertake defense of the entire suit as long as at least one claim is potentially covered by the policy.'" *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500, 517-18 (3d Cir. 2012) (quoting *Caplan v. Fellheimer Eichen Braverman & Kaskey*, 68 F.3d 828, 831 n.1 (3d Cir. 1995)).

Unlike the duty to defend, an insurer is only obligated to indemnify its insured for damages actually covered by the policy. *See Fed. Ins. Co. v. Dentsply Int'l Inc.*, Civ. No. 06-cv-0991, 2007 WL 4150664, *1 n.3 (M.D. Pa. Nov. 19, 2007) (citing *Caplan*, 68 F.3d at 831 n.1). While "there is no blanket rule giving rise to a duty to indemnify where the insured settles the underlying action[,]" *Am. W. Home Ins. Co. v. Donnelly Distribution, Inc.*, 523 F. App'x 871, 874 (3d Cir. 2013) (citing *Regis Ins. Co. v. All Am. Rathskeller, Inc.*, 976 A.2d 1157, 1161 n.8 (Pa. Super. Ct. 2009)), where an insurer does not seek a declaration as to whether the underlying injury is a covered claim under the relevant insurance policy, the insurer must indemnify its insured for the cost of settlement as long as "the settlement is reasonable and negotiated in good faith." *Mega Constr. Corp. v. Quincy Mut. Fire Ins. Co.*, 42 F. Supp. 3d 645, 660 (E.D. Pa. 2012) (citing *Alfiero v. Berks Mut. Leasing Co.*, 500 A.2d 169, 172 (Pa. Super. Ct. 1985)). Although an insurer's duty to indemnify is narrower than the duty to defend, here Defendant's

duty to indemnify is undisturbed regarding the settled underlying cases.  Defendant has not argued that the settled cases were outside the possibility of coverage or sought a declaration to that effect, and Defendant also does not argue that the settlements were unreasonable.  Rather, Defendant contends that, because non-covered claims were included in the settlement, its liability for indemnification should be reduced.  However, there is no basis for such a reduction under Pennsylvania law and, indeed, Defendant offers no support for its position.  Therefore, Defendant's second general objection will be overruled.

### 3.    Objection Three: Defendant is liable only for a percentage of the costs for covered claims

Defendant's third general objection to Plaintiff's requests for costs is that, under New York law, Defendant is only liable for its *pro rata* share of the costs paid for covered claims based on the amount of time Defendant was on the risk.  (Doc. 98, p. 4 of 24.)  However, the court rejected this argument when it denied Defendant's motion for partial summary judgment as to choice of law, explaining that, under Pennsylvania law, "once the liability of a given insurer is triggered, it is irrelevant that additional exposure or injury occurred at times other than when the insurer was on the risk.  The insurer in question must bear potential liability for the entire claim."  *York Int'l Corp.*, 2015 WL 4162981, at *12 (quoting *J.H. France Refractories Co. v. Allstate Ins. Co.*, 626 A.2d 502, 508 (Pa. 1993)).  Accordingly,

Defendant's third general objection will be overruled as to all of the underlying cases.

### 4.     Objection Four: Plaintiff had cost sharing agreements

Defendant's fourth general objection is that Plaintiff's defense invoices identify cost sharing agreements between Plaintiff and insurers for other corporate entities associated with Plaintiff, and that Defendant should only be liable for Plaintiff's percentage share of the cost, rather than the full amounts requested by Plaintiff.   (Doc. 98, pp. 4-5 of 24.)   Plaintiff contends that the cost sharing agreements are irrelevant because they are associated with a wholly unrelated case in an Illinois county court, and that it only submitted to Defendant the amounts that it actually paid in defending the underlying covered claims.  (Doc. 100, pp. 13-15 of 53.)

The court agrees that the cost share agreements are irrelevant to Plaintiff's contractual right to have Defendant reimburse it for costs it actually incurred on covered claims.   The fact that other defendants or insurers may have paid additional amounts does not affect Defendant's duties of defense and indemnification owed to Plaintiff.  Thus, Defendant's fourth general objection will be overruled.

### 5.      Objection Five: Untimely Notice

Defendant's fifth and final general objection is that Plaintiff did not provide notice for ten of the underlying claims until November 6, 2014, and that Defendant should not be liable for defense or indemnity costs incurred prior to receipt of notice, or claims for which timely notice was not provided.  (Doc. 98, p. 5 of 24.) Plaintiff argues in response that, while it provided courtesy copies of those ten underlying complaints on November 6, 2014, it had given Defendant access to them in an electronically accessible database known as the "eRoom" within nineteen days of each underlying complaint being filed.  (Doc. 100, pp. 15-16 of 53.)  Plaintiff further argues that, even if notice of those ten claims was late, Defendant would need to show that it was prejudiced by such late notice in order to avoid its defense and indemnification obligations.  (*Id*. at p. 16 of 53.)

As noted by Plaintiff, Pennsylvania law requires a showing of prejudice for an insurer to avoid its obligations due to late notice.  *See Brakeman v. Potomac Ins. Co.*, 371 A.2d 193, 196-98 (Pa. 1977).  The Third Circuit has "recognized that 'the *Brakeman* rule applies even to policies between sophisticated parties'" in the primary insurance context, because "*Brakeman* rested above all on the court's unwillingness to permit a forfeiture of insurance protection 'unless a sound reason exists for doing so.'"  *Pac. Emp'rs Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 435 (3d Cir. 2012) (quoting *Trs. of the Univ. of Pa. v. Lexington Ins.*

*Co.*, 815 F.2d 890, 897 (3d Cir. 1987)) (quoting *Brakeman*, 371 A.2d at 197).

Here, Defendant has not alleged that it suffered any prejudice due to Plaintiff's

allegedly late notice.   Accordingly, Defendant's fifth general objection will be

overruled.

The court will now turn to Defendant's specific objections.

## A.    Specific Objections[2]

In addition to its general objections, Defendant makes specific objections as

to several individual underlying cases.   As noted above, many of these so-called

specific objections actually rely on one or more of Defendant's general objections.

### 1.    *DiGrande, Nishimura, Simons, and Saathoff*

Defendant argues with regard to these underlying actions that it should only

be responsible for a small portion of Plaintiff's actual defense and indemnification

costs based on its second and third general objections, namely that Defendant can

reduce its liability where another entity is named as a co-defendant in the

underlying case, and that it should only be responsible for a *pro rata* amount of

Plaintiff's costs based on New York law.   As discussed above, the court will

overrule General Objection Two because there is no basis to sustain it, and the

court will overrule General Objection Three because it is Pennsylvania, rather than

---

[2] In its specific objections, Defendant references the individual underlying claims by the last name of the plaintiff in each matter.   For convenience and continuity, the court will use Defendant's designations.

New York, law that applies to the York Policies.  Accordingly, the court will overrule Defendant's objections to Plaintiff's costs in the *DiGrande*, *Nishimura*, *Simons*, and *Saathoff* actions.

### 2. *Lentfer, Troglia, Richardson, Pesce, McIndoe, Lenhard, and Bernardo*

Defendant again relies on its general objections, rather than any specific objections, in arguing that it should only be responsible for a small percentage of Plaintiff's incurred defense and indemnity costs with regard to these underlying actions.  Here, Defendant relies on General Objection Three, *i.e.*, that it is only responsible for its *pro rata* share of costs under New York law, and General Objection Four, *i.e.*, that the cost share agreements Plaintiff had with other defendants in the underlying cases should reduce Defendant's liability.  (Doc. 98, pp. 6-7 of 24.)  As stated above, the court will overrule those general objections, and, likewise, Defendant's objections to the *Lentfer, Troglia, Richardson, Pesce, McIndoe, Lenhard, and Bernardo* claims.

### 3. *Robbins*

Defendant objects to paying the costs associated with *Robbins* because the underlying plaintiff's date of first exposure to asbestos-containing products occurred after the period covered by the York Policies.  (Doc. 98, pp. 7-8 of 24.)  Plaintiff contends that the underlying complaint names York Corporation, and an exhibit to the complaint states that the underlying plaintiff's date of first exposure

was prior to the expiration of the York Policies, thereby triggering Defendant's duty to defend.  (Doc. 100, p. 23 of 53.)  Plaintiff further argues that there are additional facts supporting coverage within the underlying discovery record showing that the underlying plaintiff was exposed to asbestos-containing insulation on York Corporation air conditioning units in the 1950s.  (*Id.* at p. 24 of 53.)  Thus, Plaintiff argues that the settlement of the *Robbins* action included a claim that could have been covered by the York Policies, and for which Defendant owes indemnification. (*Id.*)

The court will overrule Defendant's objection as to the *Robbins* defense costs, because the complaint meets the requirements outlined in this court's prior order.[3]  (*See* Doc. 75.)  Likewise, the court will overrule Defendant's objection as to indemnity because there was never a determination that the underlying plaintiff's injury could not possibly have been covered by the York Policies, and Defendant has not argued that the settlement was unreasonable or not negotiated in good faith.  *See Am. W. Home Ins. Co.*, 523 F. App'x at 874 (citing *Regis Ins. Co.*, 976 A.2d at 1161 n.8); *see also Mega Constr. Corp.*, 42 F. Supp. 3d at 660 (citing *Alfiero*, 500 A.2d at 172).

---

[3] The same is true with regard to Defendant's objections to the payment of defense costs in the *Jones* and *Kuhn* actions.  In each underlying case, Plaintiff has provided a complaint alleging a potentially covered claim, along with proof of the actual amounts it spent defending the case. Accordingly, the court will overrule Defendant's objections to these actions for the same reason it is overruling Defendant's objections to the payment of defense costs in *Robbins*.

### 4. *Barley*

Defendant relies on its first and fourth general objections in arguing that it owes no defense costs for the *Barley* action.  (Doc. 98, p. 10 of 24.)  In opposing Defendant's objections, Plaintiff contends that the *Barley* complaint triggers Defendant's duty to defend and that Defendant is improperly relying on extrinsic evidence to avoid its duty.  (Doc. 100, p. 27 of 53.)  The court agrees with Plaintiff. The duty to defend is determined solely upon the four corners of the complaint. *Kvaerner*, 908 A.2d at 896.  Defendant cites to defense invoices and discovery items to show that the plaintiff in *Barley* had a date of first exposure to asbestos-containing products outside the York Policies' period of coverage.  However, Plaintiff has not sought indemnification from Defendant, and instead only seeks reimbursement of defense costs.  Because the underlying complaint alleged an injury potentially covered by the York Policies, Defendant had a duty to defend and is therefore obligated to pay those costs.[4]  Further, the court has already overruled Defendant's fourth general objection, that cost share agreements should

---

[4] Defendant objects to the *Clemmer*, *Goss*, *Wahner*, *Whinery*, *Cantley*, *Fanelli*, and *Loewen* defense requests for the same reasons, and those objections will likewise be overruled.  As previously stated herein, Defendant's duty to defend, once triggered by a complaint alleging injury potentially covered by the York Policies, continues until there is no possibility of a covered claim.

reduce its portion of liability.   Therefore, Defendant's objections to the *Barley* costs will be overruled.[5]

### 5.   *Cressy*

Defendant objects to Plaintiff's request for defense costs in *Cressy* because discovery revealed that the underlying plaintiff was exposed to asbestos in products not manufactured or sold by York Corporation.  (Doc. 98, p. 11 of 24.) Plaintiff argues in response that Defendant is merely relying on its general objections and that the underlying complaint triggered Defendant's duty to defend. (Doc. 100, pp. 29-30 of 53.)

While it appears, from documents from the underlying case cited by Defendant, that the parties in the underlying action discussed, at some point in discovery, that no York Corporation products had been identified as a cause of the underlying plaintiff's injury, (*see* Doc. 100, p. 11 of 24), such a discussion between the parties in the underlying action did not foreclose all "possibility that the underlying plaintiff could recover on a covered claim."  *Frog, Switch*, 193 F.3d at 746.  As stated above, an insurer's duty to defend is triggered whenever a claim

---

[5] Defendant similarly objects, on the bases of its first general objection – that Plaintiff did not provide sufficient documentary support for its claimed costs – and its fourth general objection – that its liability should be reduced according to Plaintiff's cost share agreements – to Plaintiff's requests for costs in the following actions: *Wichman*, *Toomey*, *Talbot*, *Saathoff*, *Romine*, *Phillips*, *Moore*, *Marcelja*, *Lovett*, *Loewen*, *Lee*, *Kuhn*, *Jones*, *Holbrook*, *Hale*, *Groves*, *Gisler*, *Fisher*, *Fanelli*, *Drivon*, *DeKraai*, *De La Rosa*, *Datis*, *Cantley*, and *Brasher*.   Because the court has overruled Defendant's first and fourth general objections, the objections to these individual underlying cases will also be overruled.

may potentially be covered.  *See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc.*, 2 A.3d 526, 541 (Pa. 2010) ("[I]t is the potential, rather than the certainty, of a claim falling within the insurance policy that triggers the insurer's duty to defend.") (citation and internal quotation marks omitted).  In order to eliminate any uncertainty as to the duty to defend, an insurer may bring a declaratory judgment action to resolve the question of coverage.  *Id*. at 542.  Even if the insurer is successful in the declaratory judgment action, however, that victory for the insurer does not "retroactively eliminate the insurer's duty to defend the insured during the period of uncertainty."  *Id*. (citing *Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 153 F.3d 919, 924 (8th Cir. 1998)).  Where an insurer elects to neither bring a declaratory judgment action nor defend its insured, "the insurance company's refusal to defend at the outset of the controversy is a decision it makes at its own peril."  *Id*. (citing *Casper v. Am. Guar. & Liab. Ins. Co.*, 184 A.2d 247, 248 (Pa. 1962)) (quoting *Cadwallader v. New Amsterdam Cas. Co.*, 152 A.2d 484, 488 (Pa. 1959)).  Here, Defendant did just that.  By not defending Plaintiff or seeking declaratory judgment in the underlying case as to the duty to defend, Defendant took the risk that there might be a covered claim.  That potential for a covered claim triggered Defendant's duty to defend, which would not be terminated until there was no possibility of a covered claim, or, in other words, until there was a judicial determination that no covered claim existed.  *See Erie Ins. Exch. v.*

*Transamerica Ins. Co.*, 533 A.2d 1363, 1368 (Pa. 1987) ("[I]t is the duty of the insurer to defend until such time as the claim is confined to a recovery that the policy does not cover."); s*ee also Stein v. N. Assurance Co. of Am.*, 617 F. App'x 28, 30-31 (2d Cir. 2015) (citing *Avondale Indus., Inc. v. Travelers Indem. Co.*, 774 F. Supp. 1416, 1425 (S.D.N.Y. 1991)) (The "duty to defend continues until judicial determination, either in [the] underlying action or in [the] coverage action, of [the] issue relevant to coverage.") (citation omitted) (alterations in original).  Here, there was no such judicial determination and, therefore, the court will not relieve Defendant of its duty to defend based on a discussion occurring between the parties during discovery.  Accordingly, Defendant's objection will be overruled as to the defense costs incurred in the *Cressy* action.[6]

### 6.  *Fisher*

Defendant objects to Plaintiff's request for reimbursement of defense costs in the *Fisher* action based on its first and second general objections, and because the underlying plaintiff's direct exposure to asbestos-containing products occurred after the York Policies' coverage period.  (Doc. 98, p. 17 of 24.)  Plaintiff contends that the underlying complaint alleges a potentially covered claim and obligates

---

[6] Defendant objects to Plaintiff's requests for defense costs in *Brasher* and *Romine* for the same reasons, but with even less certainty regarding the impossibility of a covered claim.  Thus, for reasons similar to those stated with regard to *Cressy*, Defendant's objections to Plaintiff's requests for defense costs in *Brasher* and *Romine* will likewise be overruled.

Defendant to reimburse Plaintiff for its costs in defending the case.  (Doc. 100, pp. 38-39 of 53.)

Because the court has already overruled Defendant's general objections, it will therefore reject them here as bases for Defendant to avoid its duty to defend. Plaintiff has provided an underlying complaint alleging a potentially covered claim, along with proof of the actual amounts it incurred in defending the case. Defendant has not shown that the possibility of a covered claim was extinguished at any time in the underlying litigation and therefore Defendant remains obligated to pay for the defense of the case.  Thus, Defendant's objections to the payment of defense costs for the *Fisher* action will be overruled.[7]

### B.    Miscellaneous Objections

In addition to its general and specific objections, Defendant also objects to the payment of defense costs for twelve unresolved cases in the state of Utah,[8] as well as four other cases for which no defense costs have been incurred.  (Doc. 98, pp. 23-24 of 24.)  As to the Utah cases, Defendant objects that the defense invoices provided do not reflect meaningful legal work.   As stated above, however, if Defendant wished to be involved in the defense of the underlying cases and oversee counsel providing that defense, including auditing or objecting to defense

---

[7] Defendant advances the same objections to the payment of defense costs in the *Leary* and *Talbot* actions, and those objections will likewise be overruled.

[8] The named Utah actions are as follows: *Allred*, *Bell*, *Bird*, *Green*, *Johnson*, *Kohles*, *Olsen*, *Peterson*, *Ryser*, *Spainhower*, *Taylor*, and *Van Leeuwen*.

invoices, it had the opportunity to do so when presented with notice of the claim, and it refused. *See Jerry's Sport Ctr.*, 2 A.3d at 545 (stating that where an insurer chooses to defend an action against its insured, it allows the insurer "to monitor and review defense fees, compare them to [the insurer]'s preferred billing guidelines, and refer the invoices to a third-party auditor for scrutiny."). Because Defendant chose not to defend the underlying cases, it lost the opportunity to object to the reasonableness of the defense invoices. Accordingly, Defendant's objections to the Utah actions will be overruled.

Finally, with regard to the four cases for which no costs have been incurred, Plaintiff contends that it has merely placed Defendant on notice that those underlying cases involve potentially covered claims and is reserving the right to submit costs in the future. (Doc. 100, p. 53 of 53.) Defendant has not made any objection on the basis that these cases do not involve potentially covered claims, and, therefore, Defendant's objection to these cases will be overruled.

## III.   <u>Conclusion</u>

For the reasons stated herein, the court will overrule all of Defendant's objections to Plaintiff's requests for payment of defense and indemnification costs in the underlying asbestos actions, and finds Defendant liable for the payment of

those costs.

An appropriate order will issue.


 s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated: February 29, 2016